FILED
Mar 27, 2018
03:08 PM(ET)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | | |
|---|---|---|
| Jeff Hornal, | ) | Docket No. 2017-05-1189 |
|       Employee, | ) | |
| v. | ) | |
| Thunder Ridge Transport, Inc., | ) | State File No. 47830-2017 |
|       Employer, | ) | |
| And | ) | |
| Liberty Insurance Corporation, | ) | Judge Thomas Wyatt |
|       Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

This claim came before the Court on March 21, 2018, on Jeff Hornal's Request for Expedited Hearing. Mr. Hornal sought medical and temporary disability benefits, raising the central issue of whether he would likely prevail at a hearing on the merits in establishing that his right-knee injury arose primarily out of and in the course and scope of employment. For the reasons set forth below, the Court holds Mr. Hornal likely to prevail at a hearing on the merits and awards Mr. Hornal medical benefits and some of the requested temporary disability benefits.

### History of Claim

Thunder Ridge Transport, Inc. hired Mr. Hornal as a truck driver in November 2016. He consistently worked six days per week before the date of his injury and did not experience right-knee pain in performing his duties.

Mr. Hornal's job included pushing heavy carts of mail into and out of a truck. On June 19, 2017, a wheel of a cart became stuck, causing him to abruptly stop his stride. When this occurred, Mr. Hornal's right knee "popped" and became painful. He reported his injury the next day, and Thunder Ridge authorized him to seek emergent care at Centennial Medical Center.

1

Mr. Hornal told providers at Centennial that he injured his right knee at work while pushing a cart.[1] He denied previous musculoskeletal conditions. Following an x-ray, the emergency physician dismissed Mr. Hornal with crutches and diagnosed arthritis and joint effusion in the right knee.

Mr. Hornal saw Dr. Chris Kromer for authorized treatment on June 28. Dr. Kromer ordered an MRI of the right knee, which revealed a torn meniscus and arthritis. Dr. Kromer placed him on restricted duty and prescribed orthopedic care. Thunder Ridge provided a panel, and Mr. Hornal selected Dr. Allen Anderson. He did not work in the interim between seeing Drs. Kromer and Anderson.

Mr. Hornal saw Dr. Anderson on July 7. After reviewing the diagnostic studies, he assessed Mr. Hornal with "a constellation of problems, which are severe. He has recently had a torn meniscus. Secondly, he has preexisting chondral problems or degenerative changes in the medial side of his knee and a varus deformity." Dr. Anderson injected Mr. Hornal's knee but noted his treatment options included knee replacement. Dr. Anderson prescribed medication and a knee brace, which Mr. Hornal currently uses. Dr. Anderson addressed his return to work on and after July 7 with the following note: "Unable to work till: Follow Up appointment."

Mr. Hornal did not work between July 7 and his next appointment with Dr. Anderson of September 29. Dr. Anderson did not note following the second visit that he took Mr. Hornal off work or placed restrictions on his activities. However, Mr. Hornal testified that he did not return to work because his right-knee pain prevented him from performing his duties at Thunder Ridge. Mr. Hornal stayed out of work until January 4, when he took a less strenuous, lower-paying truck-driving job for another company.

Returning to his treatment with Dr. Anderson, the carrier's adjuster emailed Dr. Anderson the following inquiry on October 5, 2017: "You mentioned in your report that Jeff Hornal . . . has varus deformity and chondral problems which are sever [sic] as well as a torn meniscus. Is the primary cause of his current disability over 51% due to the work injury?" Dr. Anderson responded by checking the "No" option without further explanation.

Mr. Hornal testified that Thunder Ridge "shut everything down" after receiving Dr. Anderson's response. He stated that Thunder Ridge did not authorize further care with Dr. Anderson,[2] nor did it pay for the emergency visit to Centennial. Mr. Hornal also

---

[1] All other providers whom Mr. Hornal saw for his right-knee injury recorded a similar history of injury.

[2] Dr. Anderson is now deceased, but Thunder Ridge has not offered Mr. Hornal another panel despite the doctor's passing.

asserted that Thunder Ridge did not pay temporary disability benefits from June 20, 2017, to January 3, 2018.

After Thunder Ridge's denial of his claim, Mr. Hornal consulted an unauthorized orthopedist, Dr. James Wiesman. Dr. Wiesman recorded that Mr. Hornal was "adamant" that he never experienced right-knee pain before suffering the injury at Thunder Ridge. Dr. Wiesman diagnosed a tear of the medial meniscus and arthritic changes in his right knee. Based on Mr. Hornal's history, Dr. Wiesman stated, "[i]n my opinion, the problem that Mr. Hornal is having with his right knee at this time is greater than 51%[3] due to the work injury that occurred on 6-20-17."

In a later affidavit, Dr. Wiesman stated, "it is my opinion the injury i.e. meniscus tear, arose primarily out of and in the course and scope of his employment when his right knee 'popped' while pushing a cart full of mail as described on or about 6/20/17." Dr. Weisman also stated, "[t]o the extent that the abnormal condition of his right knee is an aggravation of a preexisting condition, it is my opinion that the aggravation of his preexisting condition arose primarily out of and in the course and scope of his opinion as described above." Dr. Wiesman recommended an arthroscopic meniscectomy.

### Findings of Fact and Conclusions of Law

Mr. Hornal has the burden of proof on the essential elements of his claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, at an expedited hearing, he can establish his eligibility for benefits by coming forward with evidence from which the Court can determine he is likely to prevail at a hearing on the merits in establishing entitlement to benefits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To obtain an interlocutory order for benefits, Mr. Hornal must show he will likely prevail at a hearing on the merits in establishing that he suffered an injury "arising primarily out of and in the course and scope of employment[.]" Tenn. Code Ann. § 50-6-102(14)(A) (2017). If his injury involves an aggravation of a preexisting condition, he must show under the same standard "that the aggravation arose primarily out of and in the course and scope of employment." *Id.*

Under Tennessee Workers' Compensation Law, "[a]n injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(14)(B). Mr. Hornal must satisfy the expedited-hearing burden of proof in

---

[3] The Court notes that both doctors applied the same incorrect percentage in considering the causation of Mr. Hornal's injury.

establishing the work-relatedness of any suggested treatment for his right-knee injury. Tenn. Code Ann. § 50-6-102(14)(C).

The Court holds that Mr. Hornal carried his burden and, thus, is entitled to medical benefits and some of the temporary disability benefits he sought. Thunder Ridge did not challenge Mr. Hornal's testimony that his right-knee problems began at work when his knee popped while pushing a cart. The Court holds that Mr. Hornal credibly testified on both the mechanism of his injury and the fact that he suffered no previous right-knee pain. Thus, at a hearing on the merits, Mr. Hornal will likely prevail in establishing that the injurious event at Thunder Ridge occurred and that he suffered no right-knee pain until that event.

The above ruling, however, does not end the Court's inquiry, because Mr. Hornal must also establish a causal relationship between his work injury and his need for medical treatment. Mr. Hornal introduced Dr. Wiesman's opinions into evidence, while Thunder Ridge relied on Dr. Anderson's opinion, on this issue. Thus, the Court must weigh their opinions to resolve the conflict between the parties.

Because Mr. Hornal selected Dr. Anderson from a panel, the law affords his opinion a rebuttable presumption of correctness. Tenn. Code Ann. § 50-6-102(E). The causation inquiry to which Dr. Anderson responded indicated his negative response to the question of whether Mr. Hornal's *"disability* was over 51% due to the work injury." (Emphasis added.) This opinion leaves open for interpretation whether Dr. Anderson would have answered the same way if the adjuster had inquired whether Mr. Hornal's *injury* arose primarily out of and in the course and scope of employment. Although Thunder Ridge contends that Dr. Anderson's response would be the same, the Court is unwilling to speculate on that point.

On the other hand, instead of communicating his opinion by checking a box without offering explanation, Dr. Wiesman provided extensive discussion rationalizing his opinion that Mr. Hornal's injury arose primarily out of and in the course and scope of employment. He posited two bases underlying his causation opinion: (1) he felt the absence of end-stage arthritis in Mr. Hornal's right knee supported his opinion that the recent work injury was the primary cause of his injury; and (2) he accepted the accuracy of Mr. Hornal's history that he did not experience right-knee pain before his injury at Thunder Ridge.

In view of the above, the Court holds that, at a hearing on the merits, Mr. Hornal will likely prevail in rebutting Dr. Anderson's unfavorable causation opinion by a preponderance of the evidence. Dr. Anderson's opinion did not specifically address the causation of Mr. Hornal's injury, while Dr. Wiesman's opinion did. Further, the Court credits the truthfulness of Mr. Hornal's testimony that he did not experience right-knee pain before the date of injury. Thus, the Court holds that Mr. Hornal satisfied his

4

requisite burden of proving the work-relatedness of his right-knee injury.

*Medical Benefits*

The ruling here entitles Mr. Hornal to ongoing authorized medical treatment of his right-knee injury. Because of Dr. Anderson's passing, Thunder Ridge shall promptly offer a panel for Mr. Hornal's selection of a new authorized treating orthopedist.

As for the unpaid emergency room bill, the Court holds that Mr. Hornal will likely prevail at a hearing on the merits in establishing the treatment he received at Centennial constituted reasonable and necessary treatment of his right-knee injury. However, because he did not introduce into evidence documentation of the amount charged, the Court cannot at this time order that Thunder Ridge pay it. But, upon receiving proper billing information, Thunder Ridge shall remit appropriate payment for Mr. Hornal's emergent treatment at Centennial.

*Temporary Disability Benefits*

Mr. Hornal seeks temporary total disability benefits from the date of injury until he began his new job on January 4. He also seeks temporary partial disability benefits since January 4 because he earns less in his new job.

To receive temporary total disability benefits, an employee must prove (1) total disability from working as the result of a compensable injury; (2) a causal connection between the injury and the inability to work; and (3) the duration of the period of disability. *Shepherd v. Haren Constr. Co., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 15, at *13 (Mar. 30, 2016). Specific to the issues here, the Workers' Compensation Appeals Board held in *Young v. Young Electric Co.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 41, at *12 (Sept. 14, 2016), that an employee must prove he has a disability related to a work injury in order to recover temporary total disability benefits.

Here, Dr. Anderson's initial visit report documented that he placed Mr. Hornal off work from the date of the visit, July 7, until the next treatment visit on September 29. Since Dr. Anderson did not see Mr. Hornal for any condition other than his right-knee injury, the Court holds that he will likely prevail at a hearing on the merits on entitlement to temporary total disability from July 7 until September 29. Thus, the Court awards Mr. Hornal twelve weeks and one day of temporary total disability benefits at his compensation rate of $526.07, which equates to $6,387.99.

However, Mr. Hornal did not introduce into evidence proof of a work-related disability after September 29. Further, he did not prove his earnings after January 4. Consequently, the Court finds, at this time, that Mr. Hornal will not likely prevail in establishing entitlement to temporary disability benefits after September 29.

5

**IT IS, THEREFORE, ORDERED** as follows:

1.  Thunder Ridge shall promptly provide a panel of orthopedists for Mr. Hornal's selection of an authorized treating physician for of his right-knee injury. Thunder Ridge shall promptly schedule an appointment with the selected physician.

2.  Upon receiving appropriate billing information, Thunder Ridge shall promptly pay all charges associated with the emergent care that Mr. Hornal received at Centennial Medical Center

3.  Thunder Ridge shall pay $6,387.99 in temporary total disability benefits.

4.  This matter is set for a Status Hearing on **May 21, 2018, at 1:00 p.m. Central Time/2:00 p.m. Eastern Time**. The parties must call (615) 741-3061 or toll-free at (855) 747-1721 to participate in the Status Hearing. Failure to call in may result in a determination of the issues without the parties' further participation.

5.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2017). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6.  For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov.

**ENTERED March 27, 2018.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

6

## APPENDIX

<u>Exhibits</u>: The Court admitted the following exhibits into evidence during the Expedited Hearing:

1. Affidavit of Jeff Hornal;
2. Affidavit of Dr. H. James Wiesman;
3. Records of Centennial Medical Center;
4. Records of Dr. Allen F. Anderson/Tennessee Orthopaedic Alliance;
5. Records of Dr. Chris Kromer/American Family Care;
6. Records of Dr. H. James Wiesman/Columbia Orthopaedic Clinic;
7. Records of Spring Hill Imaging Center;
8. Form C-42 Choice of Physician Form; and
9. Form C-41 Wage Statement.

<u>Technical record</u>: The Court reviewed the following filings in considering the issues presented during the Expedited Hearing:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Notice of Expedited Hearing; and
5. Employer Position Statement.

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on March 27, 2018.

| Name | Certified Mail | Via Email | Service sent to: |
|------|----------------|-----------|------------------|
| Richard Matthews, Employee Attorney | | X | Rmatthews95@aol.com Sdbarnes1964@aol.com |
| Behnaz Sulkowski, Employer Attorney | | X | Behnaz.sulkowski@libertymutual.com Erin.edgell@libertymutual.com |

**PENNY SHRUM, COURT CLERK**
**wc.courtclerk@tn.gov**

7



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *five business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within five business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                          RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries        $ _____ per month    Telephone        $ _____ per month
Electricity      $ _____ per month    School Supplies $ _____ per month
Water            $ _____ per month    Clothing         $ _____ per month
Gas              $ _____ per month    Child Care       $ _____ per month
Transportation  $ _____ per month    Child Support    $ _____ per month
Car              $_____ per month
Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____    (FMV) _____
Checking/Savings Acct. $ _____
House                 $ _____    (FMV) _____
Other                 $ _____    Describe: _____

11. My debts are:

Amount Owed                    To Whom

_____            _____
_____            _____
_____            _____
_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____